**J. H. RORK v. LAS OLAS COMPANY**

23 So. (2nd) 839
November 2, 1945
Rehearing denied December 17, 1945

June Term, 1945
Special Division B

Carl A. Hiaasen and McCune, Hiaasen & Fleming, for appellant.

Davis & Lockhart, for appellee.

THOMAS, J.:

The chancellor entered a final decree commanding appellant, the seller, to execute a deed conveying certain property to appellee, the buyer, "in accordance with the terms of the instrument signed by him [the seller] on February 12, 1944." It was alleged in the original bill of complaint that the parties entered into a contract 12 February 1944 whereby the defendant (appellant) had agreed to convey the property for $11,000, $1,000 of which was acknowledged to have been received, and $10,000 of which was to be paid upon consummation of the sale. Other details of the transaction were set out, but we purposely omit them, now because the kernel of the case is the existence or non-existence of a contract.

The answer simply denies each allegation of the bill.

After some of the testimony had been taken the plaintiff was allowed to amend its bill "to conform to the proofs

adduced." Among other averments in this new pleading were ones that the "agreement sued upon, filed as Plaintiff's evidentiary Exhibit *1* . . . was signed and acknowledged by the Defendant in the presence of two witnesses on February 12, 1944" also that "thereafter on the 14th day of March, 1944, the date Defendant was to go to the office of the mutual attorneys and accept the balance of the purchase price and deliver the deed, Defendant . . . refused to deliver" and persisted in declining to effectuate the contract.

Defendant denied each and every paragraph of the pleading also.

Before proceeding further we reiterate that in the original bill the plaintiff rested solely on a contract of 12 February 1944. The significance of this date will appear as we analyze "Exhibit 1," the "agreement" mentioned in the amendment to the bill, and compare it with an exhibit offered by the defendant and lettered "A." Both, as filed by the master, have been sent to us with the record. Obviously these two papers were originally the same, the former being a carbon copy of the latter. They were prepared by the law firm of Saunders and Patterson. The title of each is "AGREEMENT OF SALE." Exhibit 1, the carbon copy, bears the recital that it was entered into February "12th," 1944, but the numeral "12th" was inserted in ink in a blank space left by the scrivener. At the end of the paper appears, in a space provided for a signature, the name "J. H. Rork" in ink, and under it "LAS OLAS COMPANY BY [in longhand] H. E. Adelsperger, Jr., Pres.-Treas." In the usual position opposite the signatures appears "Signed, sealed and delivered in the presence of:" followed by names purporting to be the signatures of J. B. Patterson and Grace D. Weigel. Underneath the latter is the notation in ink, "as to J. H. Rork." Appended is a certificate originally prepared to show acknowledgment of execution of J. H. Rork and H. E. Adelsperger, Jr., as "President of Las Olas Company," but all reference to the latter has been stricken with ink. Again, in the notary's certificate appears the month of February and the year 1944, and in the space left for insertion of the day, "12th" in ink. The signature of the notary is "Grace D. Weigel."

We have been at some pains to describe the appearance of the introductory and concluding parts of this carbon copy for reasons which will become readily apparent as we proceed with a discussion of the case.

Now, these exhibits were identical when signed by appellant and delivered to Saunders and Patterson, described as "agents" of the purchaser. Upon request by appellant for return of the papers he was given only the original, in the precise condition it was when both were deposited. Later suit was brought, based on the carbon copy, but it had been signed by appellant and by witnesses and executed by a notary who certified to the appearance before her of appellant, but not of the person who supposedly affixed his signature as an officer of appellee.

It is especially significant that the copy, Exhibit 1, purports to have been executed by both parties 12 February, and to have been acknowledged the same day by appellee only. In short, excepting the signature of Rork, the original of this so-called agreement, at the time of its introduction by appellant, was exactly as written on the typewriter, while the carbon copy, at the time it was offered by appellee, had definitely been altered in the sense that it had been completed except for the acknowledgment of appellee.

We think that almost entirely upon the circumstances surrounding this metamorphosis depends the decision of this case. This is true because it is on Exhibit 1, according to the amended bill, and on the contract of February 12, according to the original bill, that plaintiff relies for recovery.

It may be fitting here to allude to two findings of the master. He concluded that the seller could not withdraw his "offer," after receiving the first payment of $1,000, without giving the other contracting party reasonable notice of his intention "unless the buyer actually signed the contract." He had already determined that, although the defendant (appellant) had signed and acknowledged the agreement in the presence of two subscribing witnesses 12 February 1944, it was not by "fair influence . . . signed by the plaintiff [appellee] until sometime after March 14th, 1944, *the date upon which the defendant rescinded or undertook to rescind*

*or withdraw the contract."* He considered Saunders and Patterson "mutual attorneys" and decided that after the buyer had fully performed the obligations of the *"contract"* by delivering to these "mutual attorneys" the remainder of the purchase price "without any strings attached which would enable the buyer to recall the deposit there remained no longer any further reason for any formal signing of the contract by the defendant, and it became too late for the seller to withdraw his *offer."* (All italics in this paragraph supplied.)

Incidentally, all findings of the master were confirmed by the chancellor.

We encounter some difficulty in or attampt to follow the master to the first and last of these conclusions. Evidently the appellant was thought to have made an offer which could not be withdrawn without reasonable notice, a rule which would only apply in the absence of the execution of the contract by the buyer. It occurs to us that this is hardly an appropriate rule because in the original bill of complaint it was alleged definitely that the contract was made 12 February 1944 by plaintiff and defendant, by which the one agreed to sell certain property and the other agreed to buy it. (It is cnly fair to interpolate that in the amendment there was merely the allegation of signing and acknowledging by the defendant, but we think the initial pleading prevails because it was represented to the court in the petition for leave to file the latter that it was only intended to make "clear and more definite the allegations" of the original; that no new or different issues or matters inconsistent with the then issues would be introduced. The last of these findings, immediately under study, seems to be predicated on the status of the attorneys as "mutual" representatives of buyer and seller, but this does not seem to be borne out by the record. In the first place, the contract itself, on which the appellee squarely stood, designates these attorneys as "agents of the purchaser." Doubtless this designation was agreeable to appellee when eventually it decided to sign the agreement. The description is supported by the testimony of the two members of the firm. Mr. Patterson said his firm was representing Mr..

Adelsperger, president and treasurer of the buyer-corporation, while Mr. Saunders testified to the same effect. Furthermore, Mr. Saunders was secretary and director of the company.

This contract could not be considered inconsequential when it is the very one which appellee sought specifically to enforce and which the chancellor ordered performed. It is obvious to us that the agreement evidenced by plaintiff's Exhibit 1—defendant's Exhibit A—was the nucleus and basis of this litigation; that plaintiff's hope of success was anchored to it.

Adverting for the moment to the payment of the residue of the purchase price, we think it cannot be successfully asserted that it was delivered without reservations when that delivery was made by appellee to its own agents. It was in the form of two checks, one for $100 on a local bank, one for $9,900 on a Michigan bank. The latter is, we think, typical of both. It was dated 4 February 1944, eight days before the alleged contract, was payable to Mr. Saunders, indorsed by him and his firm, and paid by the bank 21 February 1944. It bears no indorsement by appellant, nor is there any evidence that he received the money or any part of it. It is not disputed that he got the first payment of $1,000, and this he offers now to repay. There is evidence that he offered to return it when he demanded his contract.

We quite agree with the finding of the master, which is among those approved by the chancellor, that the contract was not executed by appellee until after the appellant attempted to withdraw from the deal, but for the same reasons we think the contract, though signed by him, was not witnessed and acknowledged until the time appellee signed. This, we think, is apparent from the discrepancy between the original (appellant's Exhibit A) and the copy (appellee's Exhibit 1).

It may not be successfully argued at this late date that the written agreement was of no moment, after all, because it is plain that in it were incorporated the terms and conditions of the transaction to which appellant and appellee were parties. The best evidence that the latter realized the importance of

signing it is that eventually it did so, prompted, however, by the former's effort to withdraw. We think that the negotiations between the parties culminated in the contract and that it was by this instrument they were to be bound. We have said that "where parties intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed." Ocala Cooperage Co. v. Florida Cooperage Co., 59 Fla. 390, 52 So. 13.

The appellee takes the rather odd position in its brief that "the contract is binding on the Defendant, owner of the property, if Mr. Adelsperger had not signed the contract at all," and in support of it quotes the Statute of Frauds, Section 725.01, Florida Statutes, 1941, and F.S.A. Appellee is tardy in assuming that position because, as we have already pointed out, in the original bill of complaint he based his action solidly on the agreement of 12 February 1944, into which he asserted both parties entered and by which both were bound. As we have said, too, in the motion to amend this pleading it was represented thaat there were no new or *different* issues or matters inconsistent with the issues of the initial bill and that the sole purpose of filing it was to make clear and more definite its averments. After the testimony was taken by the master subsequent to the amendment to the bill, the master's supplemental report concluded with the statement that he saw "no reason to modify . . . the Findings and Recommendations" made in his first report. Added to this is the circumstance, plain to us, that appellee did consider it necessary to execute the instrument, made the basis of the bill, a course doubtless precipitated by the appellant's demand that the contracts be returned to him.

It seems inescapable to us that argument of the case now on the proposition that the contract signed by the seller was sufficient under the Statute of Frauds would be a position new and different from the one assumed at the time the bill was filed to enforce a contract declared to have been executed by both parties, and would amount to a departure. If the appellee contends that it should prevail in a suit on the theory that its signature was not necessary, why did it affix a signa-

ture after the appellant had served notice of his intention to revoke? We are convinced it was the intention of both parties that the Exhibits 1 and A should constitute the contract between them, just as appellant averred, and that the only question for us to decide is whether the contract was put at an end when the appellant called for it, tendered the $1,000 he had been paid, and was handed the original. If, of course, it did terminate at that point, the appellee could not have revived it by executing the carbon copy.

It is fundamental that a prerequisite of a decree for specific performance is the existence of a valid contract. We recapitulate. Appellee sued on a written contract which had been prepared by its own attorneys. Duplicate copies of the instrument were signed by the appellant and left with these attorneys, where they reposed for more than a month— beyond the time contemplated for consummating the sale. Appellant decided to withdraw, and called upon the attorneys for the return of the papers he had signed, at the same time offering to refund the money he had received. The original copy was given to him in the same condition it was when it was left by him with the attorneys. After this definite revocation on appellant's part the appellee signed the copy, obviously considering then that signature by it was vital to relief on the contract.

It is plain to us that these parties intended that negotiations be absorbed in the so-called contract forming the basis of the suit; that their actions with reference to the transfer of the property should be governed by its terms. It is our opinion that when it lay in the office of appellee's attorneys for a period which we think, under the circumstances, was reasonable, the appellant had the right to withdraw at any time before the agreement was executed by the appellee. We further have the view that the purported contract on which this bill of complaint was founded was in fact no contract at all because the instrument had not been signed.

It has been said by this court, quoting from Steamship Co. v. Swift, 86 Me. 248, 29 Atl. 1063, "If . . . [a] party neither had nor signified . . . an intention to close the contract until it was fully expressed in a written instrument and attested

by signatures, then he will not be bound until the signatures are affixed,' " and continuing, "If . . . . it [the written draft] is viewed as the consummation of the negotiation, there is no contract until the written contract is finally signed.' " Hinote v. Brigman et al., 44 Fla. 589, 33 So. 303.

Again, in the light of this decision, we draw attention to the circumstance that the written draft here involved was prepared by appellee's attorney for signature and acknowledgment, not only by appellant, but also by appellee. This demonstrates to us the intention of appellee that both parties should execute the agreement which embodied the terms and conditions of the transaction. One wonders, in passing, what the attitude of appellee would have been had a suit been instituted by appellant (on Exhibit A) against appellee for specific performance of the contract. Would the latter not have immediately defended on the ground that it had signed no contract?

The appellee in the amended bill veered from its original course (the while asserting that no new issues were injected) by charging that the contract was signed by the defendant who reneged the day he was to deliver the deed and accept the purchase price; at the conclusion it argues that the signature of only the appellant entitled it to recover under the Statute of Frauds. Having adopted the contract as the foundation of the suit, appellee was bound to that commitment and, having failed to support it with evidence, it should not have prevailed; so the decree is—

Reversed.

CHAPMAN, C. J., BUFORD and SEBRING, JJ., concur.

23 So. (2nd) 621                                  June Term, 1945
November 2, 1945                           Special Division B