253 So.2d 461 (1971)
GATEWAY CABLE T.V., INC., a Corporation, Appellant,
v.
VIKOA CONSTRUCTION CORPORATION, a Corporation, Appellee.
No. O-196.
District Court of Appeal of Florida, First District.
October 21, 1971.
*462 John Paul Howard, Jacksonville, for appellant.
Roland E. Williams, Jr., of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, Jacksonville, for appellee.
RAWLS, Acting Chief Judge.
Appellant-plaintiff Gateway Cable T.V., Inc. appeals an adverse directed verdict in favor of appellee-defendant Vikoa Construction Corporation in this breach of contract action. The sole point on appeal is that the trial court erred in directing a verdict in favor of defendant Vikoa because it did not formally execute the contract document.
Facts are recited in a light most favorable to plaintiff at the close of its case. Gateway is the owner of a franchise to construct and operate a community antenna television system in St. Augustine. Vikoa is engaged in the business of constructing and financing such systems. In October of 1968 the president of Gateway visited with officials of Vikoa at their home office in Hoboken, New Jersey, resulting in negotiations between the parties for the construction and financing of the St. Augustine system by Vikoa. During the early part of December 1968, a representative of Vikoa met with the president of Gateway in Jacksonville, Florida, at which time "the basics" of a form contract furnished by Vikoa were filled out. Subsequently, negotiations continued by telephone between the parties as to changes in the form contract. As of this time (December 1968) Gateway was subject to a critical deadline. It had posted a $50,000 bond conditioned upon the completion of the proposed system at the end of June 1969. Also in December Vikoa conducted a helicopter survey for the proposed tower site. A second contract incorporating the changes was forwarded to Gateway by Vikoa, accompanied with a letter of transmittal dated January 9th. Around February 12th Vikoa's finance director, its Southeastern sales manager, and its construction coordinator met with Gateway officials in Jacksonville, Florida. Mr. Michael Joyce advised the group that, as finance director, responsibility of the project from Vikoa's standpoint rested upon his shoulders. After spending a day investigating the site for the system, the group jointly prepared the final document. As questions arose during preparation, Mr. Joyce telephoned his home office in Hoboken, and in this manner the final terms were agreed upon and typed. The formal contract as thus agreed upon was executed by Gateway officials. Gateway's president testified: "* * * the whole negotiations surrounded  were concerned [with] the fact that Vikoa Construction Company *463 would come to Jacksonville to finalize the contract and there was no question whatsoever when they sent down their fine [finance] director that we had a contract, when he said we had one." The contract executed by Gateway was at this time delivered to the Vikoa officials.
A day or two later the president of Gateway was advised by telephone conversations with officials of Vikoa that Gateway was to perform under the contract and inquiry was made as to Gateway's delay in forwarding a check in the sum of $5,000 called for in the contract. On February 17th another telephone conversation was had between the president of Gateway and Vikoa's finance director, who advised that "we had a deal" and to send the $5,000. The president of Gateway forwarded the $5,000 on February 17th along with a cover letter detailing various acts of performances on Gateway's part pursuant to the contract. This check was promptly negotiated by Vikoa and the proceeds deposited in its bank. Numerous telephone and written conversations were subsequently had between Gateway and Vikoa officials pertaining to electronic devices, size of land for the tower, and other details as to the construction of the system. As of March 18th, on which date Gateway advised Vikoa of various acts on its part in performance of the contract, such as copies of papers forwarded to FCC, opinion letter from its Washington attorney relative to the FCC papers, and Florida Power and Light Company maps, the contract seemed to be progressing satisfactorily.
Subsequent to March 18th, Vikoa in telephone conversations with Gateway officials advised that a newly formed finance committee had turned down the contract; that Mr. Joyce's agreement was no longer binding; and that unless the interest rate or price per mile was changed, Vikoa would not perform. Gateway took the position that it had a binding contract which had been partly performed. On April 9th Vikoa forwarded to Gateway its check in the sum of $5,000 with a notation that same represented a return of deposit and was in full payment of all claims. This check has not been negotiated by Gateway. Approximately 90 days after it signed the contract with Vikoa, Gateway negotiated a contract with another firm to construct and finance the system.
Upon the conclusion of plaintiff's case, the trial judge advised the jury that the contract provided that it would not be binding on Vikoa until it was signed by two people at the home office; that it was clear plaintiff expected to receive a signed contract; and that defendant did nothing in furtherance of the contract. The trial judge, in directing a verdict for defendant Vikoa, stated: "I don't  I think from the plaintiff's testimony it's quite clear that the plaintiff's confidence was misplaced in relying on some oral promises, but they were quite aware of the provisions of the contract, that is, that a signed contract was required, I mean signatures were required in order to make it valid; that no one in Jacksonville had any authority to sign the contract because they had salesmen all over the United States, you remember, and they couldn't have everybody sign it. It had to be signed at home and it just wasn't done * * *"
We hold that under the undisputed facts of this case the trial judge erred in directing a verdict for defendant.
The trial judge apparently based his decision to direct a verdict for defendant on the language set out in paragraph XV of the contract stating that the contractual agreement should not be binding until executed by two duly authorized representatives of Vikoa, which was never done. A contract may be binding on a party despite the absence of a party's signature. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties.[1] *464 Analogous to the facts in the instant cause is the case of N.L.R.B. v. Local 825, International Union of Operating Engineers.[2] There, the Third Circuit Court of Appeals citing 1 Williston on Contracts, 3rd ed. § 90A; Corbin on Contracts, § 75; and other authorities, stated:
"The Union had a contractual duty to refer employees to Ernst which it violated. The Union through its business manager asked Ernst to sign the contract, which he did, and transmitted his signed copies through Corrigan to the Union. There never was any dispute between the Union and Ernst over the contract. The Union supplied men to Ernst before July 7, 1960. It sent him forms needed for making payments to the pension and welfare funds. That the Union failed to sign the agreement is immaterial for any written contract though signed only by one of the parties binds the other if he accepts it and both act in reliance on it as a valid contract. Justice Holmes once said: `[C]onduct which imports acceptance is acceptance or assent, in the view of the law, whatever may have been the actual state of mind of the party.' And as Lord Chancellor Sugden wrote: `Tell me what you have done under such a deed and I will tell you what the deed means.' It is clear the Union violated its duty to refer employees to Ernst."
In the instant cause plaintiff adduced testimony that a contract was "hammered out" between the parties in Jacksonville, Florida, with numerous points being resolved by Vikoa's finance officer telephoning Vikoa's home office in Hoboken, New Jersey; Vikoa asked Gateway to execute same and forward the sum of $5,000, which was done; Vikoa cashed Gateway's $5,000 check and retained the proceeds for several weeks; and Vikoa during a period of at least six weeks, while in the exclusive possession of the contract executed by Gateway, assured Gateway that it had a binding contract and encouraged Gateway to perform under the contract. Time was of the essence in the contract and the purported rejection by Vikoa came only after a change in its managerial policies. As stated by the Court of Appeals in Silvey v. Wynn:[3] "A Contract signed by one of the parties only, but accepted and acted on by the other party to it, may be just as binding as if it were signed by both parties, if the obligations of the parties are mutual."
Vikoa contends that Rork v. Las Olas Co.[4] is controlling. There, a proposed seller of certain property executed a contract on February 12, 1944, and received concurrent with the execution of the instrument $1,000 of the total consideration of $11,000. The balance of $10,000 was to be paid upon consummation. The complaint alleged that the buyer had executed the contract on February 12, 1944, but the evidence reflected that the buyer only executed the contract after the seller withdrew his offer. The Supreme Court of Florida, in denying specific performance on the part of the buyer, stated:
"* * * Appellee sued on a written contract which had been prepared by its own attorneys. Duplicate copies of the instrument were signed by the appellant and left with these attorneys, where they reposed for more than a month  beyond the time contemplated for consummating the sale. Appellant decided to withdraw, and called upon the attorneys for the return of the papers he had signed, at the same time offering to refund the money he had received. The original copy was given to him in the same condition it was when it was left by him with the attorneys. After this definite revocation *465 on appellant's part the appellee signed the copy, obviously considering then that signature by it was vital to relief on the contract.
* * * * * *
"It has been said by this court, quoting from Mississippi & D. Steamship Co. v. Swift, 86 Me. 248, 29 A. 1063, 41 Am. St.Rep. 545, `"If * * * [a] party neither had nor signified * * * an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed,"' and continuing, `"If * * * it [the written draft] is viewed as the consummation of the negotiation, there is no contract until the written contract is finally signed."' Hinote v. Brigman et al., 44 Fla. 589, 33 So. 303, 305."
We conclude that Rork is not controlling, for here the party who executed the contract did not attempt to withdraw but, to the contrary, proceeded to perform under the assurances of the other party that it had a contract. It appears that the court in Rork protected the party who had executed the contract from the party holding same.
"The parties may have entered into an oral contract which is effective without regard to whether the writing is signed * * *. Their intention governs. The intention of the parties is a fact to be decided upon the evidence * * *."[5] We hold that a jury question is presented as to whether the instant contract was accepted and acted on by Vikoa and that extrinsic evidence may be introduced to determine the intention of the parties.
Reversed and remanded.
JOHNSON, J., and McLANE, RALPH M., Associate Judge, concur.
NOTES
[1] 17 C.J.S. Contracts § 62, p. 736.
[2] N.L.R.B. v. Local 825, International Union of Operating Eng., 315 F.2d 695, 698, 699 (3rd Cir.1963).
[3] Silvey v. Wynn, 102 Ga. App. 283, 115 S.E.2d 774, 775 (1960).
[4] Rork v. Las Olas Co., 156 Fla. 510, 23 So.2d 839, 842, 843 (1945).
[5] Wiegand v. Tringali (1970), 22 Mich. App. 230, 177 N.W.2d 435; 1 Williston on Contracts, 3rd ed., § 28, p. 66.