667 So.2d 393 (1995)
H & S CORPORATION, a foreign corporation, and Fidelity & Deposit Company of Maryland, a foreign insurance corporation, Appellants/Cross-Appellees,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Appellee/Cross-Appellant.
H & S CORPORATION, a foreign corporation, Appellant,
v.
JONES, EDMUNDS & ASSOCIATES, INC., Appellee.
Nos. 92-2403, 92-2891.
District Court of Appeal of Florida, First District.
December 19, 1995.
*395 Gregory A. Giordano of Shuttleworth, Ruloff, Giordano & Kahle, Virginia Beach, Virginia; William Avera, Gainesville, for Appellant/Cross-Appellee/H & S Corporation.
Steven George Schember of Schumaker, Loop & Kendrick, Tampa; Marguerite H. Davis, John C. Lovett, Alan Harrison Brents, *396 and Daniel C. Brown of Katz, Kutter, Haigler, Alderman, Davis & Marks, P.A., Tallahassee, for Appellant/Cross-Appellee/Fidelity.
Allan P. Clark and John A. Tucker of Foley & Lardner, Jacksonville, for Appellee/Cross-Appellant/USF & G.
Jack W. Shaw, Jr., of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, P.A., Jacksonville, for Appellee/Jones, Edmunds & Associates.
MINER, Judge.
These appeals present numerous issues arising from complex, multi-party litigation which was generated by the construction of a waste water collection system in Cross City, Florida. The record before us is massive  over 26,000 pages and 160 volumes. The bench trial alone produced nearly 6,000 pages of transcript. In resolving the issues on appeal, we have found no need to recite all the operative facts surrounding the several disputes in exacting detail but instead believe that a short synopsis will suffice.
Briefly, the original contractor on the project was terminated due to unsatisfactory performance, leaving its exposed surety, United States Fidelity & Guaranty Insurance Co. (USF & G) to engage another contractor as a "completing contractor". USF & G entered into a contract with H & S Corporation (H & S) to complete the work on the system. Subsequently, problems arose with H & S' performance leading to its default. Thereafter, USF & G asserted claims against H & S and H & S' surety, Fidelity & Deposit Company of Maryland (Fidelity) and H & S asserted counter claims against USF & G. H & S also sued the project engineer, Jones, Edmunds & Associates (JEA) for allegedly misrepresenting details concerning the project site and the nature of the work to be performed. The two cases were consolidated for a bench trial but the trial court issued separate final orders.
Procedurally, H & S is the appellant in both cases before this court but is joined by its surety, Fidelity, in case # 92-2403. That case contains most of the issues before us for resolution and arises from the USF & G v. H & S/Fidelity action below. Case # 92-2891 arises from the H & S v. JEA action below and while it presents only two issues to be resolved, it is part of the same complex fact situation found in case # 92-2403. In this court, the two cases were consolidated for record and oral argument purposes.
After considering the briefs filed in these two cases and hearing oral argument of counsel and after a painstaking review of the voluminous record on appeal, we conclude, as follows:

Case No. 92-2891
Appellant, H & S, as "completing contractor" argued below that the project engineer, JEA, misrepresented details concerning the project site and the nature of the work to be performed at the site. The trial court found that JEA was not liable to H & S for a changed site claim and further, concluded that JEA was not liable to H & S on a negligent misrepresentation theory. We find no basis in the record to overturn those findings and affirm as to these points.
Evidence established that H & S representatives viewed the jobsite prior to bidding and were able to observe high ground water and subsurface rock that had been partially excavated. H & S' project manager informed USF & G at that time that he did not believe the original report regarding subsurface rock formations and water table levels, to which H & S had access, accurately depicted the prebidding inspection condition of the jobsite. Accordingly, the earlier report could not reasonably have been relied upon and, in fact, was not relied upon by H & S in making its bid.
Based upon the evidence at trial, the trial court properly rejected H & S' negligent misrepresentation claim against JEA. What H & S denominated as "misrepresentations" were, in our view, not misrepresentations at all. The record establishes that the earlier soil/rock/water table testing report was not false or misleading concerning the conditions present at the construction site in the area where the test borings were taken at the time they were taken. H & S was cautioned not to rely on this earlier test *397 data. As did the trial court below, we likewise find no misrepresentation concerning JEA's authority to test H & S work prior to authorizing payment. Such prospect was clearly set out in H & S' contract with USF & G. Finally, it was a matter of opinion rather than a misrepresentation concerning the extent of the latent defect work which needed to be done to remedy the shortcomings in the original contractor's work. By contract definition, latent defect work was "not discoverable in the exercise of reasonable diligence by persons possessing customary knowledge in the type of construction which is the subject of this Agreement."

Case No. 92-2403
Although all of the parties refer to the same basic facts, it is apparent to us from the briefs and oral argument that no single party is concerned with every issue raised on appeal in this case. For orderliness of presentation, we have regrouped the issues presented into three categories: (1) the issues raised by H & S and Fidelity; (2) separate "surety" issues raised by Fidelity, and (3) USF & G's cross appeal.

H & S/Fidelity Issues
H & S and Fidelity first maintain that the trial court erred in ruling that H & S materially breached its contract with USF & G. It was USF & G, they argue, that breached the contract prior to H & S' quitting the jobsite in May of 1987. Specifically, H & S claims that the requirement of testing H & S work before payment and the imposition by USF & G of a "pay when paid"[1] condition, constituted unauthorized changes in payment terms that justified H & S's walking off the job. On the record before us, we find that the trial court did not err in this ruling.
As we noted above in connection with Case No. 92-2891, testing is provided for in the contract between the parties. The specifics of such testing are explained in the contract's mechanical specifications. Although the "test before payment" condition was authorized by the contract and had been imposed upon the original defaulting contractor, this condition was not initially imposed upon H & S. It was only invoked in late October of 1986 when it became apparent to project engineers that H & S workmanship was substandard. The contract also required that partial payment requests be submitted to the engineer for approval, which approval could be withheld if the work was non-conforming.
Our review of the record does not indicate that H & S ever objected to the "testing before payment" specification. Indeed, testing was required by the project engineer of H & S's work during all but the first two months of H & S's nine months on the job. Although H & S cited USF & G/JEA's failure to pay as a reason for walking off the job, no mention was made of the testing requirement. Thus, we turn to the question of whether the record supports H & S's contention that it was owed money when it left the job.
When H & S left, it did not indicate what payments were due. At oral argument, counsel for H & S was specifically asked where payment requests for which no payment was made could be found in the record. Counsel could not provide any assistance to the court in this regard. Our review of the record did not turn up such requests.
It was not disputed, however, and the trial court found that H & S received a total of $755,850.21 for work on the project. Approximately $390,000 of this payment was for contract work and the remainder was for latent defect/change order work which was compensated at a rate of "cost + 25%." We can find no fault with the trial court's conclusion that H & S was actually overpaid for the work it performed prior to its work stoppage. USF & G presented evidence that, due to overpayments for latent defect work, H & S was overpaid when it left the job in May of 1987 and that such would have been the case even if the project engineer had approved all of H & S's work. In short, we find competent substantial evidence to support the trial *398 court's ruling that H & S breached its contract with USF & G.
H & S next argues that the trial court erred in granting summary judgment in favor of USF & G on H & S's negligent misrepresentation counter-claim. We are not so persuaded and affirm on this issue. Given the trial court's factual finding at trial that H & S had been overpaid for latent defect work when it quit the job, we find it unnecessary to address the appropriateness of the trial court's ruling on this point.
We find no merit in H & S's next assertion that the trial court committed reversible error when it ruled that USF & G was under no obligation to pay H & S until it was paid by the town of Cross City. Whether the "pay when paid" clause in the contract was valid or not is irrelevant because at the time it abandoned the contract, H & S had already been paid more than the reasonable value of its installed work.
In the next point addressed by the parties, Fidelity challenged the trial court's award of $200,000.00 in costs to USF & G for "research inspections and examinations" performed by USF & G's expert, Ross Malone. A lengthy hearing was held on this issue at which Mr. Malone defended the reasonableness of his invoices and spreadsheet. The question was complicated by the fact that Malone performed services for USF & G over a nearly 5-year period that included non-taxable matters, including conferring with USF & G's attorneys. Although Mr. Malone's spreadsheet and invoices included these non-taxable costs, we do not agree with Fidelity that the trial court included non-taxable items in its $200,000.00 award.
According to the spreadsheet, USF & G/Malone sought $348,488.30, which sum specifically excluded a separate category for conferences with counsel. This amount consisted of some $290,000 for pre-trial research and an additional $60,000 for a hybrid category that was relevant to both pre-trial research as well as Malone's services for curing H & S's default. A separate category of costs is solely related to Malone's "default services" and this category was not included in the $348,000 figure. Fidelity argues here as below that that figure included non-taxable expenses and support services. However, even when all such amounts are excluded, there are still some $250,000 of taxable costs remaining. Indeed, at the evidentiary hearing, counsel for Fidelity and USF & G ultimately narrowed their dispute to this remaining $250,000. USF & G argued that this amount, with expenses and support excluded, constituted a reasonable cost award. Fidelity contended that an additional reduction should be made because the remaining $250,000 included amounts in excess of the time Malone needed for his immediate review prior to trial. It argued and analogized that Malone's $250,000 figure was like the total time one might spend taking a class when the recoverable amount should only include the time spent studying for the final exam (i.e., the immediate pre-trial review to prepare for testimony); Fidelity suggested an appropriate amount would be $40,000.
The trial judge announced his decision to award $200,000 after hearing argument of counsel. We are confident that he did so based upon his examination of the spreadsheet and invoices and upon his knowledge of Mr. Malone's testimony. While the trial court may not have revisited the invoices with calculator in hand in an attempt to revise or recategorize the detailed spreadsheet before him, it is clear that the award did not include amounts for expenses and support services as suggested by Fidelity on appeal. Moreover, amounts specifically relating to attorney conferences were excluded. In sum, the trial court accepted the spreadsheet itemization and awarded a reduced amount for what was denominated pre-trial research inspection and examination. In this ruling, we can find no abuse of discretion and affirm on this point.
Next, H & S contends that the trial court erred in awarding prejudgment interest to USF & G without stating a fixed date for USF & G's out-of-pocket losses. It argues that the trial court committed error in awarding prejudgment interest from USF & G's March 1988 advance to the town of Cross City pursuant to the "Compromise, Settlement and Loan Agreement." According to H & S, the $1,333,570.21 that was advanced *399 under the agreement was subject to being refunded to USF & G to the extent that the funds were not needed to complete the project. Hence, H & S asserts that it could not be determined how much of the advanced sum would actually constitute USF & G's losses so as to permit prejudgment interest on the entire amount. We agree with H & S on this point.
The trial court awarded prejudgment interest in the amount of $725,635.52, which included $634,846.64 of interest on the amount advanced to the town of Cross City. USF & G countered that because bids from completing contractors had already been submitted by the time of USF & G's advance of the $1.33 million to the town and such bids established that all of the advance would be expended, it was reasonable to conclude that USF & G's loss was fixed at the date of the advance. Additionally, USF & G points out that the parties stipulated that the entire advance was ultimately expended.
Whether or not it was reasonable to infer that the entire amount would be expended does not, we believe, resolve the issue. This court has held that there are two prerequisites to an award of prejudgment interest: (1) out-of-pocket pecuniary loss; and (2) a fixed date of that loss. Spaulding v. Albertson's Inc., 610 So.2d 721, 724 (Fla. 1st DCA 1992); see also Tolin v. Doudov, 626 So.2d 1054, 1056 (Fla. 4th DCA 1993) (there must be a liquidation of damages as well as a determination as to when the claim became fixed). A claim may become liquidated, however, and thus susceptible of prejudgment interest, when a verdict has the effect of fixing damages as of a prior date. Argonaut Insurance Co. v. May Plumbing, 474 So.2d 212, 214 (Fla. 1985).
In the case at bar, the trial court's final judgment cannot be said to have fixed USF & G's damages at the date of the advance. Only when specific portions of the advance were expended could USF & G be said to have sustained an out-of-pocket loss on a fixed date. Prior to actual expenditure, USF & G's advance was clearly of a contingent nature. Because the trial court made no findings on the fixed dates of actual expenditure, the $634,846.64 in prejudgment interest must be reversed.

Fidelity's Suretyship Issues
Next, in the trial court, Fidelity sought discharge from its obligation under its bond because it claimed the contract it actually bonded was changed without its consent. We find such an argument to be unavailing. Notwithstanding the broad "waiver of changes" language in Fidelity's bond, there were no changes to the USF & G/H & S contract that were not anticipated in the contract itself. Thus, Fidelity was charged with knowledge that latent defect work was to be handled by change orders; this was stated in the contract, and Fidelity's own claims representative testified that it was a "typical" arrangement for completing contractors. If Fidelity was somehow harmed by H & S and USF & G's agreement to proceed on a "cost + 25%" arrangement for this work, then the risk of that harm was present in the contract at the time Fidelity issued its bond. The condition of testing prior to payment was also included in the contract and is thus not a "change" that would permit Fidelity's discharge.
With respect to Fidelity's argument that the trial court erred in awarding judgment to USF & G where USF & G failed to disclose material information to the surety, Fidelity's reliance upon Jacksonville Port Authority v. Parkhill-Goodloe Co., Inc., 362 So.2d 1009 (Fla. 1st DCA 1978), is misplaced. That case did not hold, as suggested by Fidelity, that exculpatory language in contract or bid documents is ineffective to preclude a changed site condition claim. Rather, the "exculpatory" language at issue in that case was susceptible of being interpreted as a guarantee that conditions found at the testing sites would likely be similar to those at the adjacent sites. Despite making this guarantee, the owner knew of unfavorable conditions at adjacent sites which it did not reveal. In the case at hand, by contrast, no guarantee was made. The rebidding package used the original soil/rock/water table testing report but the contract and bid documents made plain that: (1) that report was for information only; (2) the bidder was *400 responsible for obtaining its own geotechnical assessment; (3) the existence of subsurface rock and high ground water was contemplated; (4) new testing borings should be obtained; and (5) H & S could file a claim for changed site conditions if such conditions were discovered. Because no guarantee was made and no information was withheld, USF & G was permitted to rely upon the exculpatory language in the contract. See Miami-Dade Water & Sewer Authority v. Inman, Inc., 402 So.2d 1277 (Fla. 3d DCA 1981), rev. den., 412 So.2d 466 (Fla. 1982).
Fidelity also argues that the trial court erred by failing to discharge it to the extent that USF & G failed to allow Fidelity to mitigate its damages by timely informing Fidelity of H & S's default. Again, we find such an argument to be without merit. H & S was not in default until it stopped work in May of 1987. Trial testimony more than adequately established that the quality of H & S's work was improving prior to its work stoppage and that any earlier notice of default would have been both premature and unwarranted.

USF & G's Cross-Appeal
Turning now to USF & G's argument on cross-appeal that the trial court erred in holding that it was only entitled to attorneys' fees incurred in rebidding the contract and not to those incurred in the litigation surrounding the contract, we affirm such holding.
Attorney fee awards in civil cases are subject to review by the abuse of discretion standard. DiStefano Construction, Inc. v. Fidelity and Deposit Co. of Maryland, 597 So.2d 248 (Fla. 1992). In its ruling on this issue below, the trial court held, as follows:
USF & G is not entitled, pursuant to the parties contract, bond or by reason of Fla. Stat. § 627.428 and 627.756 to recover the attorneys' fees ... incurred in the litigation of this matter. The court further finds and holds that USF & G is entitled, pursuant to its contract with H & S and the [Fidelity] bond, only to recover such attorneys' fees... incurred as a result of steps taken to overcome or remedy the breach and/or default on the contract by H & S, but specifically excluding such fees and expenses incurred for this litigation.
An examination of the contract and bond provisions relied upon by USF & G persuades us that the trial court was correct. Paragraph 5 of the USF & G/H & S contract sets out H & S's responsibility to provide insurance so that USF & G is held harmless for claims of injury to persons or property resulting from H & S's work; H & S's responsibility in this area includes legal fees for any action that may be brought against USF & G. Clearly, this provision does not include fees incurred in litigation between USF & G and H & S over the contract. See Sprayberry v. MGC, Inc., 467 So.2d 1 (Fla. 5th DCA 1985) (provision in aircraft lease that lessee would indemnify lessor for claims and attorneys' fees arising directly or indirectly from possession for use of the aircraft did not permit the lessor to recover attorneys' fees from the lessee in an action for rent due under the lease agreement).
Paragraph 10 of the USF & G/H & S contract presents a closer question, but, we believe, still falls short of authorizing fees for the proceedings below. As H & S points out, paragraph 10 sets out the steps USF & G may take in the event H & S is terminated for default. These steps include: (1) taking possession of material and equipment at the jobsite to complete the work; (2) requiring H & S to assign subcontracts or purchase orders; or (3) having the work completed by whatever method USF & G deems expedient. After these steps are taken and the project is completed, H & S may either (1) be owed any unpaid balance to the extent the balance exceeds USF & G's completion costs, or (2) be liable to USF & G to the extent such costs exceed any unpaid balance. After setting out these completion steps, and without any mention of legal action, the paragraph concludes with the following: "The costs recoverable by [USF & G] in the event of [H & S's] default and/or breach shall include, but not necessarily be limited to, attorney's fees, accounting, engineering and investigative expenses." Because legal action between USF & G and H & S is nowhere mentioned, and the provision only speaks to the process by *401 which USF & G can complete the project, we agree with the trial court that the attorneys' fees recoverable under the provision are limited to those incurred in the rebidding and completion process. Contractual attorneys' fee provisions must be strictly construed. See B & H Construction v. Tallahassee Community College, 542 So.2d 382 (Fla. 1st DCA) (provision authorizing recovery of attorneys' fees for legal action did not include fees incurred prior to legal action), rev. den., 549 So.2d 1013 (Fla. 1989). Thus, for the reasons argued by Fidelity, the bond does not have the effect of expanding USF & G's right to recover attorneys' fees.
In summary, in Case No. 92-2891, we affirm as to each issue raised. We likewise affirm all the issues raised on appeal and cross-appeal in Case No. 92-2403, except as to the trial court's award to USF & G of $725,635.52 in prejudgment interest. Our review of the record persuades us that this amount should be reduced to $90,788.88 in that fixed dates for this amount have been established.
AFFIRMED in part, REVERSED in part and REMANDED with instructions.
ZEHMER, C.J., and WOLF, J., concur.
NOTES
[1] Paragraph 4 of the contract between H & S and USF & G only required that USF & G pay for contract work "to the extent [monies are] actually received by the Surety (USF & G) from the obligee (Town of Cross City)."