677 So.2d 1378 (1996)
UNDERHILL FANCY VEAL, INC., Underhill Feeds, Inc., and Richard Hester, Appellants,
v.
David PADOT and Suwannee River Holsteins, Ltd., Appellees.
No. 95-2975.
District Court of Appeal of Florida, First District.
August 20, 1996.
*1379 W. Dexter Douglass and Kimberly A. Humphrey of Douglass, Powell & Rudolph, Tallahassee, for appellants.
Roy Wasson, Miami; Barbara Green, Coral Gables; Robert J. Denson and Richard J. Delmond, Gainesville, for appellees.
WOLF, Judge.
Appellants, Underhill Fancy Veal, Inc., Underhill Feeds, Inc., and Richard Hester, challenge a final judgment rendered against them after a jury trial on appellees' claims for (1) misrepresentation, (2) intentional interference with a business relationship; (3) breach of fiduciary duty, and (4) deceptive trade practices. We affirm the final judgment in all respects, but find one issue merits discussion: Whether the trial court erred in awarding prejudgment interest from the day appellant, Hester, left the employ of appellees.
In 1987, David Padot and his aunt, general partners in a cow and beef operation known as Suwannee River Holsteins Limited, began to experiment with raising veal. In March 1989, after the death of his aunt, Padot began to consult with Richard Hester, a recognized expert in the veal industry, who came in to analyze the operation. At that time, Hester was procuring calves and troubleshooting for SwissLand Packing. Hester later became a sales and service representative for Zeck's Feed Service, which sold veal feed (powdered milk), for Underhill Feeds.
Padot offered to hire Hester to come manage his veal operation in August of 1989. Hester, who was living and farming in Illinois at the time, decided to come to work for Padot as the farm manager at a yearly salary of approximately $36,000 to $38,000, with benefits. Hester, however, did not close down his personal veal and grain farm in Illinois. He also continued to work for Zeck's selling Underhill feed, receiving a salary and a vehicle from Zeck's.[1] While still working for Zeck's, Hester switched Suwannee River to Underhill feed.
*1380 During the time that Hester worked for appellees, Suwannee River's promising veal business failed. At trial, Padot and Suwannee River presented a number of witnesses concerning questionable behavior and decisions made by Hester, which were alleged to have benefited Underhill. Hester and Underhill presented witnesses who contradicted the evidence.
The accountant for Suwannee River, Barbara Coulthurst, had prepared financial statements for Suwannee River in the regular course of business which were admitted into evidence. These documents showed that Suwannee River had a net worth of more than $3,000,000 in 1989, prior to Hester's employment, and had a net worth of negative $837,560 when Hester left. In calculating net worth, the accountant stated that her final figure was as of the exact date Hester left. No other evidence concerning damages was presented. The jury was instructed that damages were to be based on the difference between the value of the business before the incident and the value thereafter (an instruction which was not objected to by appellants). The final judgment entered was for damages in the amount of $1,950,000, plus prejudgment interest in the amount of $1,031,523.20.
There are two prerequisites to the award of prejudgment interest as damages: (1) Out-of-pocket pecuniary loss, and (2) a fixed date of loss. H & S Corp. v. U.S. Fidelity & Guaranty Co., 667 So.2d 393 (Fla. 1st DCA 1995). Prejudgment interest is generally not awarded in tort cases, because damages are generally too speculative to liquidate before final judgment. Lumbermens Mut. Casualty Co. v. Percefull, 653 So.2d 389 (Fla.1995). The rule is not absolute, however, and prejudgment interest may be awarded in tort cases as to those damages where there has been an ascertainable out-of-pocket loss occurring at a specific time prior to the entry of the judgment. Alvarado v. Rice, 614 So.2d 498 (Fla.1993); Phillips v. Parrish, 585 So.2d 1038 (Fla. 1st DCA 1991). Under this theory, prejudgment interest has been upheld in incidents involving the loss of vested property rights. Alvarado, supra (citing Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985) (holding that prejudgment interest is properly awarded in a case involving the negligent destruction of a building); Barnes Surgical Specialties, Inc. v. Bradshaw, 549 So.2d 1189 (Fla. 2d DCA 1989) (finding that a salesman has a right to prejudgment interest on commissions which were improperly withheld); International Community Corp. v. Overstreet Paving Co., 493 So.2d 25 (Fla. 2d DCA 1986) (ruling that a subcontractor has a right to prejudgment interest on a valid mechanic's lien)).
In cases involving the destruction of a vested property interest, it is not necessary to demonstrate that the party has actually made an expenditure to replace the property. Florida Farm Bureau Casualty Ins. Co. v. Patterson, 611 So.2d 558 (Fla. 1st DCA 1992). It is also not necessary to demonstrate that the parties are in agreement as to the value of the damages on the date of the loss, only that the value was ascertainable at that time. State Farm Fire and Casualty v. Albert, 618 So.2d 278 (Fla. 3d DCA 1993), rev. denied, 629 So.2d 135 (Fla. 1993); Phillips, supra. See also Charles Buzbee & Sons, Inc. v. Falkner, 585 So.2d 1190 (Fla. 2d DCA 1991).
In the instant case, the damages awarded reflect the damage done to the vested property right in the business at the time Hester left. The measure of damages here was the decrease in the value of the business at that time, which was an ascertainable amount. Under these circumstances, the trial court did not err in awarding prejudgment interest.
Affirmed.
BENTON and VAN NORTWICK, JJ., concur.
NOTES
[1] When Hester's family eventually moved down from Illinois, Hester terminated his employment with Zeck's.