816 So.2d 1207 (2002)
GLOVER DISTRIBUTING CO., INC., and the Radiant Group, LLC, Appellant/Cross-Appellee,
v.
F.T.D.K., INC., Appellee/Cross-Appellant.
Nos. 5D01-1316, 5D01-2213.
District Court of Appeal of Florida, Fifth District.
May 24, 2002.
*1209 Allan P. Whitehead of Frese, Nash & Hansen, P.A., Melbourne, for Appellant/Cross-Appellee.
David N. Glassman of David N. Glassman, P.A., Orlando, for Appellee/Cross-Appellant.
PALMER, J.
In this consolidated appeal, Glover Distributing Company and the Radiant Group, LLC (collectively "Glover") appeal the final judgment entered by the trial court in accordance with the jury's verdict in favor of F.T.D.K. on its breach of contract claim (Case No. 01-1316), and the trial court's supplemental final judgment awarding F.T.D.K. prejudgment interest (Case No. 01-2213). Finding no reversible error, we affirm.
Glover leased the Merritt Island Amoco Station to F.T.D.K. pursuant to a lease which ran for a period of three years, from July 1996 through June 1999. Paragraph twenty of the parties' lease agreement was entitled "Redevelopment Rider" and provided Glover the right to modify the existing building and improvements during the term of the lease. The rider further gave F.T.D.K. a waiver in rent during the period of construction in the event such redevelopment occurred and, in exchange, prohibited F.T.D.K. from recovering business loss damages incurred during such construction.[1]
The lease also included a separate "Improvement Addendum", which outlined details of a specific agreement by Glover to improve the property during F.T.D.K.'s three year leasehold. The agreement provided that, until such construction was commenced, F.T.D.K. was only required to pay Glover half of its usual rent amount and during construction no rent would be due. The Improvement Addendum also offered F.T.D.K. the option of renewing the lease for an additional three year period. It also contained the following antiwaiver provision:
[N]o action or lack of action unless specifically noted herein on the part of Lessee shall likewise be construed as an implied waiver or abridgment.
During F.T.D.K.'s initial three year leasehold, Glover failed to make any improvements to the property notwithstanding the terms of the Improvement Addendum and F.T.D.K.'s request and demands related thereto. During that same three year time period, F.T.D.K. paid Glover the reduced rental rate. Near the end of the leasehold period, F.T.D.K. exercised its option and renewed the lease for an additional three years. F.T.D.K. subsequently initiated this lawsuit alleging that Glover had breached the initial lease agreement by failing to timely complete the improvements outlined in the Improvement Addendum.
*1210 After the complaint was filed, Glover commenced construction of the improvements. F.T.D.K.'s rent was completely abated from September 1999 to January 2000, at which time Glover determined that the construction was completed. Starting February 2000, Glover demanded payment of the full rent amount; however, F.T.D.K. protested, claiming that all of the improvements had not been completed. Upon further demand, F.T.D.K. remitted full payment of its rent starting February 2000 but did so under protest. F.T.D.K. then amended its complaint to include a claim for the amount it contended had been overpaid for rent starting in February of 2000.
Glover filed an answer denying liability and asserting several affirmative defenses, including waiver and estoppel based upon F.T.D.K.'s acceptance of the benefit of paying a reduced rental rate during the initial three year leasehold while failing to demand timely performance of the work required under the Improvement Addendum. Glover also asserted that F.T.D.K. had failed to mitigate its damages by not completing the improvements itself.
Upon trial, the jury returned a special verdict finding that Glover breached the lease agreement, but that F.T.D.K. failed to mitigate its damages. The jury awarded F.T.D.K. damages for lost profits and rent overpayment. The trial court entered judgment in accordance with the jury's verdict and Glover timely filed a notice of appeal. While the appeal was pending, F.T.D.K. filed a motion requesting this court to relinquish jurisdiction over the case to the trial court for the purpose of entering an award of prejudgment interest. This court granted that motion and, upon remand, the trial court entered a supplemental final judgment awarding F.T.D.K. prejudgment interest. Glover filed a separate, timely notice of appeal from that order. The two appeals were thereafter consolidated by order of this court. Glover asserts four points on appeal, none of which possesses merit.
First, Glover contends that the trial court erred in refusing to permit it to assert the defense that, under the terms of the parties' contract, F.T.D.K. was not entitled to recover business loss damages. Glover bases its argument upon the contention that the following language set forth in the Improvement Addendum "essentially" constituted a liquidated damage clause, thereby prohibiting the recovery of additional business loss damages:
Upon execution of the lease agreement until commencement of a construction of improvements, rent shall be reduced from $6,090.00 to $3,045.00 each month. During the period of construction of improvements, no rent shall be due and payable....
We reject this argument as meritless.
Parties to a contract can stipulate in advance to an amount to be paid or retained as liquidated damages in the event a breach of the contract occurs. See Poinsettia Dairy Products v. Wessel Co., 123 Fla. 120, 166 So. 306 (1936). Where the parties to a contract have agreed to the consequences of a breach, the agreement will control provided the remedy is mutual, unequivocal, and reasonable. Hatcher v. Panama City Nursing Center, Inc., 461 So.2d 288 (Fla. 1st DCA 1985). Here, the trial court properly concluded that the provision set forth above was not an enforceable liquidated damage provision because it does not contain unequivocal language indicating what damages would be paid if a breach of the contract occurred. Instead, the provision simply set forth the consideration given by Glover to F.T.D.K. in exchange for F.T.D.K.'s agreement to execute the lease pending construction of the agreed upon improvements. *1211 Since the provision was applicable from the initiation of the lease, and not dependant upon a subsequent breach of the contract, it could not constitute a liquidated damage provision.
Glover also argues that the trial court erred in denying its request to present argument to the jury concerning the applicability of the terms of the Redevelopment Rider. Our review of the record reveals that the trial court properly concluded that the terms of the Redevelopment Rider were irrelevant to the instant controversy because the construction at issue specifically fell within the terms of the Improvement Addendum, not the terms of the Redevelopment Rider.
Glover also argues that the trial court erred in denying its requested jury instruction on the defense of waiver. Glover requested the instruction, contending that by renewing its lease, F.T.D.K. waived its right to object to Glover's failure to complete the improvements during the initial leasehold and thus Glover was entitled to receive a jury instruction on waiver. We find no error. First, since the Improvement Addendum specifically contains an anti-waiver provision, the trial court properly denied Glovert's request for an instruction thereon. See Eskridge v. Macklevy, Inc., 468 So.2d 337 (Fla. 1st DCA), rev. denied, 478 So.2d 54 (Fla.1985)(upholding an explicit anti-waiver provision contained in a lease/option agreement). Furthermore, no record evidence of waiver existed to support the requested jury instruction, in that the trial evidence was uncontroverted that F.T.D.K. continuously pursued its request for the commencement of construction of the improvements during the course of its initial leasehold. Additionally, F.T.D.K.'s renewal of its lease, in accordance with its right to do so under the terms of the initial lease agreement, was merely a renewal of all of the terms set forth in the original lease.
Glover next argues that the trial court reversibly erred in making evidentiary rulings related to expert testimony presented by F.T.D.K. on the issue of business losses. We again disagree.
Pursuant to interrogatories filed by F.T.D.K., Glover supplied financial information concerning other service stations located in Brevard County. Based upon that information, F.T.D.K.'s expert witness prepared a report as to the amount of F.T.D.K.'s business losses resulting from Glover's breach of the lease agreement. In reaching his conclusions, the expert based his opinion in part upon (1) the financial information supplied by Glover, and (2) F.T.D.K.'s contention that the parties had orally agreed that Glover would commence construction on the improvements in September of 1996.
Glover subsequently discovered that the financial information which it had provided was inaccurate and provided F.T.D.K. with new financial information. At the same time, Glover moved to exclude any evidence relating to the parties' oral agreement as to when construction was to commence. Since trial was imminent, the trial court continued the trial for two weeks so that F.T.D.K.'s expert could review the new financial information and prepare a new report. The court also granted Glover's motion to exclude parol evidence concerning the parties' oral agreement.
At trial, F.T.D.K.'s expert presented his opinion as to business losses suffered by F.T.D.K. as a result of Glover's breach of the Improvement Addendum. To support his testimony, the expert referred to the revised report which he prepared based upon the new financial information provided by Glover. Glover objected to the witness' use of the new report on the basis *1212 that the report had not been provided to counsel prior to trial. The court properly overruled the objection noting that it was Glover's error which precipitated the last minute preparation of the revised report.
Thereafter, on cross-examination, counsel for Glover attempted to question the expert regarding the differences in the calculations reflected in his initial and his revised reports. F.T.D.K. objected, arguing that any questioning concerning the information contained in the first report should be excluded because evidence indicating that the expert had prepared two reports would be confusing to the jury. More specifically, F.T.D.K. argued that, since the trial court had ruled that parol evidence could not be admitted concerning the parties' agreement as to the date the construction was set to commence, the expert would not be able to adequately explain to the jury why he had changed the date of breach from the first report to the second. The trial court agreed that questioning the expert concerning the differences between his two reports might place the parol evidence ruling at issue, and warned Glover that by pursuing that line of questioning it ran the risk of opening the door to testimony concerning the parties' oral agreement. The court then advised counsel for Glover that he could proceed with that line of questioning but to be cautious not to open the door to the parol evidence issue. Counsel for Glover then decided not to ask the expert about his first report.
Glover maintains that it is entitled to receive a new trial because the trial court erred in prohibiting it from utilizing the expert's initial report on cross-examination for impeachment purposes. We find no error because the record demonstrates that the trial court never ruled that Glover could not use the initial report as impeachment evidence, nor even that parol evidence would necessarily be admissible if the report was used as impeachment.
Glover next argues that the trial court erred in denying its motion for new trial based upon a claim of juror misconduct. We again find no error.
In its brief, Glover contends that the jury foreman was not candid during voir dire regarding his involvement in prior litigation. It contends that during voir dire the jurors were asked whether they had ever been plaintiffs or defendants in a lawsuit, and that the jury foreman indicated, through his silence, that he had not. However, after trial was completed, Glover alleged that the jury foreman was a named defendant in two mortgage foreclosure actions and that, had the jury foreman been truthful concerning his involvement in those two prior lawsuits, Glover would have exercised a peremptory challenge to exclude him from the jury. Notably, this claim of juror misconduct was not set forth in Glover's motion for new trial. However, apparently on the day before the trial court's hearing on the new trial motion, Glover filed a notice, attaching copies of documents from the Brevard County Public Records, including a copy of a final judgment of mortgage foreclosure dated April 13, 1993 against a party with the same name as the jury foreman.
The standard of review of a ruling on a motion to grant a new trial based on a juror's non-disclosure during voir dire of prior litigation history is abuse of discretion. Leavitt v. Krogen, 752 So.2d 730, 733 (Fla. 3rd DCA 2000). Based upon the state of the instant record, no abuse of discretion has been demonstrated with regard to the trial court's denial of Glover's motion for new trial. First, Glover did not seek to obtain a juror interview pursuant to Florida Rule of Civil Procedure 1.431(h), but instead simply sought a new trial based upon its allegation of juror misconduct. *1213 A party generally must establish juror misconduct through a juror interview before being entitled to receive a new trial. See Baptist Hosp. of Miami, Inc. v. Maler, 579 So.2d 97, 100 n. 1 (Fla.1991). Second, without a transcript of the hearing below or a stipulation of relevant facts, it cannot be determined whether the trial court was presented with this claim of misconduct. Also, no evidence was presented to demonstrate that the jury foreman was the same person as the person named in the foreclosure suit. See Beyel Bros., Inc. v. Lemenze, 720 So.2d 556 (Fla. 4th DCA 1998)(holding that trial court's denial of motion for new trial based on juror misconduct was justified, where there was no evidence presented at hearing on motion that juror had knowingly concealed relevant litigation experience during voir dire, and identity of juror as county court litigant was not demonstrated).
Glover's final claim is that the trial court reversibly erred in granting F.T.D.K.'s request for prejudgment interest because the jury's award of damages was unliquidated until the date the verdict was entered. We disagree.
Two prerequisites are required for entry of an award of prejudgment interest: (1) out-of-pocket pecuniary loss; and (2) a fixed date of that loss. See H & S Corp. v. United States Fidelity & Guar. Co., 667 So.2d 393 (Fla. 1st DCA 1995)(citing to Argonaut Ins. Co. v. May Plumbing, Co., 474 So.2d 212 (Fla.1985)). F.T.D.K. filed its motion seeking prejudgment interest contending that, in awarding lost profits, the jury determined that the losses were incurred as of February 2000. Glover conceded that any lost profits suffered by F.T.D.K. would have had to have been suffered no later than February of 2000. As such, F.T.D.K.'s damages were liquidated at least as of that date and thus the trial court properly awarded pre-judgment interest as of that date.
AFFIRMED.
COBB and GRIFFIN, JJ., concur.
NOTES
[1] The Redevelopment Rider specifically provided: "It is understood that there may be a period of time during construction when Lessor will be unable to keep the premises open to the public and during such period of time Lessor will waive Lessee's rent obligation. Lessor shall be under no further obligations to Lessee for lost revenues or increased expenses as a result of any temporary closing of the premises during redevelopment."