[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 3, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-12807
Non-Argument Calendar

_____

D. C. Docket No. 06-00421-CV-T-33EAJ

SPECIALIZED TRANSPORTATION
OF TAMPA BAY, INC.,
a Florida corporation,

Plaintiff-Appellee,

versus

NESTLE WATERS NORTH AMERICA, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 3, 2009)

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Nestlé Waters North America, Inc. ("Nestlé ") appeals from a final judgment

of the United States District Court for the Middle District of Florida in favor of Plaintiff Specialized Transportation of Tampa Bay, Inc. ("Specialized"). Nestlé appeals the district court's orders denying it judgment as a matter of law, *see* Fed. R. Civ. P. 50, and a new trial, *see* Fed. R. Civ. P. 59. Nestlé also appeals the district court's order awarding Specialized prejudgment interest. Having reviewed the parties' briefs and the record, we affirm.

## I. BACKGROUND

The claim that Nestlé appeals centered on an alleged oral agreement. Nestlé agreed to make Specialized whole for the start-up costs it expended in a "doubles" program in which Specialized would provide tandem trailer hauling services to Nestlé.

In 2004, Specialized commenced an action in Florida state court that was removed by Nestlé to federal court and subsequently dismissed. Specialized then commenced the instant action in 2006 in state court, which was also removed to the United States District Court for the Middle District of Florida. Both the 2004 and 2006 complaints sought relief for breach of an oral agreement (the "Services Agreement") in which Specialized would provide Nestlé with shipping services for a term of three years. Over the course of the three years, Specialized would be able to recoup the start-up costs it spent in establishing the doubles program through the

transportation rates charged to Nestlé. This alleged Services Agreement stated that if Nestlé terminated the contract early, it would pay Specialized's start-up costs of $585,000. In March 2008, the district court dismissed Specialized's claim for breach of the Services Agreement because it was an oral agreement lasting beyond one year, and thus was unenforceable under Florida's Statute of Frauds. *See* Fla. Stat. § 725.01.

Specialized then filed an amended complaint in April 2008, alleging—for the first time—the breach of another oral agreement (the "Reimbursement Agreement"). In the Reimbursement Agreement, the parties agreed to enter into a three-year written contract and that Nestlé would pay Specialized's start-up costs if the parties failed to execute this written agreement. Specialized's claim was tried before a jury on September 8–12, 2008, and the jury entered a verdict in favor of Specialized, finding the Reimbursement Agreement to be enforceable. According to the verdict, the total amount of damages awarded to Specialized was $544,529.33. Out of that sum, the amount of damages awarded for breach of the Reimbursement Agreement was $522,449.00. Nestlé filed post-trial motions for judgment as a matter of law and a new trial, which are the subject of this appeal. The district court denied these motions in April 2009. Later that month, the district court awarded Specialized $239,341.99 in prejudgment interest, which began

3

accruing on May 1, 2003.

Nestlé's theory of the case is that the claim for breach of the Reimbursement Agreement was merely an evolution of the previously dismissed claim for breach of the Services Agreement. That is, the Reimbursement Agreement was fabricated to get around the Statute of Frauds requirement. Nestlé relies on this theory for its claims on appeal.

First, Nestlé argues that the district court erred in denying its motion for a new trial because it improperly excluded from trial the 2004 and 2006 complaints that evidenced the "old" oral agreement (i.e., the Services Agreement). Second, Nestlé argues that the district court erred in denying a new trial because the jury instructions improperly shifted to Nestlé the burden of proving that Nestlé's agent lacked authority to bind Nestlé and of proving the damages Specialized incurred as a result of Nestlé's breach.

Alternatively, Nestlé argues that this Court should reverse the district court's denial of Nestlé's motion for judgment as a matter of law because (1) there was no meeting of the minds as to the amount of start-up costs; (2) the Reimbursement Agreement is an unenforceable agreement to agree; (3) the parties did not intend to be bound in the absence of a signed, written contract; and (4) the Reimbursement Agreement violates Florida's Statute of Frauds because it lasts beyond one year.

4

Finally, Nestlé appeals the district court's award of prejudgment interest because no demand for payment was made, and so there is no date from which to award interest.

## II. STANDARDS OF REVIEW

A district court's denial of a motion for new trial is reviewed for an abuse of discretion. *Fondren v. Allstate Ins. Co.*, 790 F.2d 1533, 1534 (11th Cir. 1986) (citation omitted). This Court will only reverse the district court's rulings on the admissibility of evidence if the district court abused its discretion and the decision affected the complaining party's substantial rights. *Wood v. Morbark Indus., Inc.*, 70 F.3d 1201, 1206 (11th Cir. 1995) (citation omitted); *see also Judd v. Rodman*, 105 F.3d 1339, 1341 (11th Cir. 1997); Fed. R. Evid. 103(a).

The denial of a motion for judgment as a matter of law is reviewed *de novo*, and we apply the same standard used by the district court. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1275 (11th Cir. 2008) (citation omitted). A district court may grant judgment as a matter of law if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." Fed. R. Civ. P. 50(a)(1). We review the entire record and examine all evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmovant's favor. *Ledbetter v. Goodyear Tire &*

*Rubber Co., Inc.*, 421 F.3d 1169, 1177 (11th Cir. 2005). This Court does not assume the jury's task of weighing conflicting evidence or assessing witness credibility. *Id.* (citation omitted). We must give credence to evidence supporting the non-movant, and give credence to that evidence favoring the "moving party that is uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (quotation and citation omitted).

We review the decision to grant prejudgment interest for an abuse of discretion. *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 283 F.3d 1286, 1298 (11th Cir. 2002).

### III.  DISCUSSION

A.  Motion for a New Trial

1. *Exclusion of Evidence*

Nestlé argues that the district court's exclusion of Specialized's prior 2004 and 2006 complaints prevented it from presenting an essential part of its defense, specifically the evolution of Specialized's claim from a breach of the "old" Services Agreement to the "new" Reimbursement Agreement. Further, Nestlé contends that it was unable to impeach Specialized's president on his contradictory sworn statements regarding the existence of the Reimbursement Agreement. Finally, Nestlé submits that the evidence was necessary to alleviate the confusion

6

at trial as to which oral agreement was at issue. That is, Specialized misled the jury by conflating the Services Agreement and Reimbursement Agreement.

The district judge excluded the complaints under Federal Rule of Evidence 403, which allows a judge to exclude relevant evidence "if its probative value is substantially outweighed by . . . confusion of the issues, or misleading the jury . . . ." To overturn such a ruling, the district court must have abused its discretion and the decision must have affected the substantial rights of the complaining party. *Wood*, 70 F.3d at 1206.

Nestlé claims that evidence of the prior complaints was necessary to prevent jury confusion that resulted when each of Specialized's three witnesses testified about different oral agreements. In particular, Nestlé submits that only Specialized President Bobby Webb testified as to the terms of the Reimbursement Agreement. However, the record shows that Specialized's two other witnesses testified about the Reimbursement Agreement *and* the Services Agreement (embodied in a written but unsigned document). Joel Adams, Nestlé's former Regional Manager for Distribution for the Southeast, stated that he made assurances to Specialized that he would make them whole on their out-of-pocket costs through this trial period. R. at 158:157–58, 214. Therefore, his testimony could support the existence of the Reimbursement Agreement. The second witness, former Specialized Vice

7

President Charles Carver, was asked what obligation Nestlé had undertaken if the contract was not signed. Carver responded that he understood that Specialized would be compensated for start-up expenses. R. at 158:253.

Nestle also argues that the complaints were necessary to impeach Webb for his inconsistent statements. However, Webb admitted the facts of the prior complaints in his testimony; that is, he claimed that the parties entered into the three-year Services Agreement. *See* R. at 159:110, 160:97–100 There was no major inconsistency between his statements in the prior complaints and those at trial, except the omission of the Reimbursement Agreement from the prior complaints.

The district court did not abuse its discretion in excluding the prior complaints.[1] The prior complaints had little probative value, as Nestlé was able to elicit the facts of the complaints from the witnesses. The district judge excluded the prior complaints to "prevent jury confusion regarding the identity of the operative complaint and the claims currently asserted, as opposed to prior claims

---

[1] Nestle cites various cases in which the district court should not have excluded prior statements or complaints. However, the facts of these cases are distinguishable. *See Wilson v. City of Aliceville*, 779 F.2d 631, 634 (11th Cir. 1986) (excluding evidence of direct evidence of discrimination in a Title VII disparate treatment claim changed the legal analysis applied to the case); *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 706–07 (2d Cir. 1989) (finding that the original complaint should have been presented to the jury where the plaintiff materially altered the facts of the claim); *Arnold v. Groose*, 109 F.3d 1292, 1296 (8th Cir. 1997) (reversing the district court's exclusion of prior pleadings as irrelevant—and not based on Rule 403—because the entire case depended on the credibility of the witness's testimony).

that have been abandoned, modified, adjudicated, or otherwise rendered obsolete." R. at 192:25. It was within the district court's permissible range of choice to find that the prior complaints would have created considerable jury confusion as to which oral agreement—the Services Agreement or Reimbursement Agreement—was at issue in the trial. *See Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1316 (11th Cir. 2005) (citation omitted).

Furthermore, the exclusion of the complaints from evidence did not affect Nestlé's substantial rights. *See Wood*, 70 F.3d at 1206. Nestlé asserts that it was essential to its defense that the complaints be admitted into evidence because its theory of the case depended on proving that the two oral agreements were really one and the same. However, Nestlé was able to point out the inconsistencies between the witnesses' testimonies on cross-examination. For instance, Carver admitted on cross-examination that the Services Agreement was the only oral agreement entered into. Webb also admitted to the facts contained in the prior complaints, namely the terms of the Services Agreement. Moreover, the jury had access to the written draft of the Services Agreement, and Nestlé had the opportunity to highlight the similarities between it and the Reimbursement Agreement. While the prior complaints were relevant to the trial, the district court properly exercised its discretion to exclude them under Rule 403.

9

2. *Jury Instructions*

Nestlé also appeals two sets of jury instructions that it claims erroneously shifted the burden of proving essential elements of Specialized's claim. We apply a deferential standard of review to jury instructions, and so long as the jury instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording of the instructions. *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1115 (11th Cir. 2006) (per curiam) (citation omitted); *Eskra v. Provident Life & Accident Ins. Co.*, 125 F.3d 1406, 1415 (11th Cir. 1997) (citation omitted). This court will not disturb the jury's verdict unless the jury instructions, taken as a whole, are erroneous and prejudicial. *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 979 F.2d 823, 824 (11th Cir. 1992) (citation omitted); Fed. R. Civ. P. 61 (courts must disregard any error or defect in the proceeding that does not affect the parties' substantial rights). If the instructions as a whole properly express the law, there is no error even if an "isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." *Somer v. Johnson*, 704 F.2d 1473, 1478 (11th Cir. 1983) (quotation and citation omitted). Therefore, to justify a reversal, we must be "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id.* (citation and quotation omitted); *Carter v. Decisionone Corp.*, 122 F.3d 997, 1005 (11th Cir.

1997) (per curiam) (citation and quotation omitted).

Nestlé first challenges the jury instruction dealing with the authority of an agent to enter into a contract. Using this Court's pattern instruction, the district court first charged the jury that "each party asserting a claim or a defense has the responsibility to prove every essential part of the claim or defense by a preponderance of the evidence." R. at 147:6 (internal quotation omitted). Then, in Jury Instruction # 12, the court charged that "[t]he second defense raised by Nestle is that Joel Adams lacked the authority to bind Nestle into the" Reimbursement Agreement. R. at 147:25. The court then instructed the jury as to the correct substantive law regarding authority and went on to say, "[I]f the preponderance of the evidence supports Nestle's defense that Adams lacked actual authority and apparent authority to enter into the contract, your verdict must be for Nestle . . . . R. at 147:26.

"When plaintiff in a civil action seeks to recover upon a contract alleged by him to have been made with the defendant through the latter's agent, the burden of proof is upon plaintiff to show the authority of the agent for making the contract." *Lee v. Melvin*, 40 So. 2d 837, 838 (Fla. 1949) (quoting *Foye Tie & Timber Co. v. Jackson*, 97 So. 517, 517 (Fla. 1973)).

Nestlé contends that these two instructions, taken together, imply that the

11

burden of proof was on Nestlé to prove by a preponderance of the evidence that Adams *lacked* authority to enter into the contract.  Instead, the burden of proof was on Specialized to prove that Adams *had* authority to enter into the Reimbursement Agreement.

While we are troubled by the district court's categorization of the "authority" element under Nestlé's defenses and the potential implication that the burden of proof was placed on Nestlé, we are not "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Somer*, 704 F.2d at 1478.  The district court gave an accurate description of the substantive law on authority and did not explicitly allocate the burden of proof to Nestlé.  *See, e.g.*, *Frosty Land Foods Int'l, Inc. v. Refrigerated Transp. Co., Inc.*, 613 F.2d 1344, 1349 (5th Cir. 1980) (finding that while no mention was made as to who had the burden of proof on a particular issue, the charge was sufficient to insure that the jury understood the issue so that no substantial rights of the parties were affected).  Furthermore, Nestlé itself asked jurors in its special interrogatory on the verdict form whether the preponderance of the evidence showed that Adams *lacked* authority to enter into the contract, demonstrating that it did not disapprove of the "lack of authority" language in the instruction.  R. at 149–4.  Specialized also gave proof at trial as to Adams's authority to enter into the contract.  Therefore, even if

12

the instructions implied that the burden was on Nestlé to prove that its agent lacked authority, any resulting error was harmless.  *See* Fed. R. Civ. P. 61.

Nestlé also challenges the jury instructions regarding failure to mitigate damages and proof of damages.  The district court used this Court's pattern jury instruction on mitigation of damages.  It stated that the "third defense raised by Nestle is that Specialized Transportation failed to mitigate its damages . . . ."  R. at 147:27.  The district court, using Florida's pattern jury instruction on damages, then charged the jury that it should award Specialized "an amount of money that the preponderance of the evidence shows will fairly and adequately compensate it for damages caused by Nestle's failure to perform."  R. at 147:28.

Nestlé argues that these jury instructions imply that Nestlé, rather than Specialized, had the burden of proving the actual damages that Specialized suffered.  However, neither instruction allocates who has the burden of proof as to these issues.  The instructions do not imply that Nestlé has the burden of proving Specialized's actual losses; rather, the instructions state that it is Nestlé's affirmative defense that Specialized failed to mitigate its damages.  While the separate instruction concerning proof of damages does not mention which party bears the burden of proof, such vagueness does not leave this Court with a "substantial and ineradicable doubt" as to whether the jury was properly guided.

13

In fact, the jury found that Specialized was able to mitigate its damages and reduced the damages award by more than $60,000. *See* R. at 149:5.

B. Judgment as a Matter of Law

    1. *Start-up Costs*

To form an enforceable oral contract, "there must be a meeting of the minds on all essential terms and obligations of the contract" such that no term is left open for negotiation. *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1229 (11th Cir. 2000) (internal quotation and citation omitted). However, courts are hesitant to hold a contract void for indefiniteness and will construe the alleged indefinite term to have a meaning consistent with the apparent object of the parties in entering into the contract. *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 407, 408 (Fla. 1974). Therefore, if the parties provide a "practicable, objective method for determining [a price term], not leaving it to the future will of the parties themselves," the contract will not be void for indefiniteness. *Id.* at 409 (internal quotation and citation omitted).

Nestlé asserts that the district court erred in denying its motion for judgment as a matter of law because the parties did not reach a meeting of the minds as to the "start-up costs" that Nestlé agreed to pay. Neither party disputes that the parties did

not agree upon an actual dollar amount at the time they entered into the Reimbursement Agreement. Nestlé argues that there was no evidence that the parties agreed to any "objective method" of quantifying "start-up costs" and did not consider the type or quantity of equipment that would have been acquired.

However, a rational jury could have found, from the testimony, that the start-up costs were the costs necessary to acquire ten doubles units.[2] Although no actual dollar amount was specified, a jury could have reasonably found that there was an objective and practicable method of determining the costs of purchasing this equipment from third-party vendors. This is not an inherently subjective term, such as the amount required for a settlement. *See, e.g., Metro. Dade Cnty. v. Hernandez*, 591 So. 2d 1124, 1124 (Fla. 3d DCA 1992) (per curiam). Moreover, by the time of the oral agreement, the parties already knew the costs of building one doubles unit.

Nestlé also argues that the dollar amount of start-up costs ($585,000) was first specified in the written draft of the Services Agreement, after the parties

---

[2] Nestlé contends that the parties did not agree that Specialized would be reimbursed for ten doubles units. While there is inconsistency in the statements of Joel Adams, a rational jury could have found that he did agree to ten units. Adams stated the written draft agreement reflected oral negotiations with Specialized and he said that he could not remember the exact number of doubles units, but that ten may have been the agreed upon number. R. at 163:262. Furthermore, Specialized's agent, Charles Carver, testified that Adams suggested that ten doubles units be inserted into the written provision. R. at 158:235. Further, Carver testified that start-up costs had been negotiated with Adams, and that Adams had instructed Specialized to move forward to acquire the necessary equipment. R. at 158:248. Contrary to Nestlé's assertion that Webb made no mention of the amount of doubles units, Webb specifically stated that Adams wanted Specialized to acquire twenty trailers, ten tractors, and ten dollies. R. at 159:109.

entered into the oral Reimbursement Agreement. Nestlé asserts that Specialized admitted that this figure was actually less than the actual amount of start-up costs because the parties agreed to a discounted figure. As a result, Nestlé submits, Specialized cannot argue that it had an objective method of determining start-up costs and then later show that the parties agreed to a discount. However, that the parties later agreed to discount does not preclude a rational jury from finding that the parties had a meeting of the minds at the time of the oral agreement.

### 2. *Agreement to Agree*

An agreement to agree in the future is an "agreement for which there is no remedy and which is thus unenforceable." *CSX Transp., Inc. v. Prof'l Transp., Inc.*, 467 F. Supp. 2d 1333, 1338 (M.D. Fla. 2006). Preliminary negotiations are different from the contract itself, and there is no meeting of the minds if the parties are "merely negotiating as to the terms of an agreement to be entered into." *Webster Lumber Co. v. Lincoln*, 115 So. 498, 503 (Fla. 1927) (per curiam) (quotation and citation omitted).

Nestlé argues that the Reimbursement Agreement is an unenforceable agreement to agree to enter into a three-year written contract and to pay for start-up costs if no such agreement was executed. However, a rational jury could find from

16

the evidence that the Reimbursement Agreement was not merely a step in negotiations, but an agreement to protect Specialized for the investment it was to make in the doubles program if no long-term contract was finalized. That is, the agreement was that Specialized would invest in ten doubles units and would be protected against the loss of investment if a written contract was not executed. Therefore, the district court was correct in denying Nestlé's motion for judgment as a matter of law because a jury could reasonably find that the Reimbursement Agreement was not an agreement to agree.

3. *Intent to be Bound by Writing*

"[W]here parties intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed." *Rork v. Las Olas Co.*, 23 So. 2d 839, 842 (Fla. 1945) (quoting *Ocala Cooperage Co. v. Fla. Cooperage Co.*, 52 So. 13, 16 (Fla. 1910)). Nestlé asserts that the testimony of the parties showed that they intended to have a written document signed to reflect any agreement that was reached, and that they did prepare such a document (the written draft of the Services Agreement).

Whether the parties intended to produce a binding agreement is a question of intent, and therefore a question of fact. *Smith v. Royal Auto. Group, Inc.*, 675 So.

17

2d 144, 152 (Fla 5th DCA 1996).  The evidence reasonably supports a finding that the parties intended that the oral Reimbursement Agreement be binding immediately, and that it last until a long-term written contract—the Services Agreement—was executed.

4.  *Statute of Frauds*

Finally, Nestlé argues that this Court should enter judgment as a matter of law in its favor because the Reimbursement Agreement violated Florida's Statute of Frauds, which prohibits the enforcement of oral agreements not capable of being performed within one year.  Fla. St. § 725.01.  The primary factor to be considered in determining whether a contract can be performed within one year is the intent of the parties, which can be determined by the object of the contract and the surrounding circumstances.  *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1177 (M.D. Fla. 2005) (citation omitted); *Yates v. Ball*, 181 So. 341, 344 (Fla. 1938).

Nestlé claims that the Reimbursement Agreement was identical to the terms of the written draft of the Services Agreement, which was for a term of three years. However, the evidence supports a rational jury finding that the two agreements were separate.  Furthermore, there is sufficient evidence for a jury to find that the

18

parties intended the Reimbursement Agreement to be an interim agreement that would last less than a year.

C. Prejudgment Interest

Finally, Nestlé appeals the district court's award of $239,341.99 for prejudgment interest on the judgment for breach of the Reimbursement Agreement. Under Florida law, there are two prerequisites to an award of prejudgment interest: "(1) [o]ut of pocket pecuniary loss, and (2) a fixed date of loss." *Underhill Fancy Veal, Inc. v. Padot*, 677 So. 2d 1378, 1380 (Fla. 1st DCA 1996) (citation omitted); *see also Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985) ("[P]laintiff is entitled, as a matter of law, to prejudgment interest . . . from the date of [] loss."). In a breach of contract action, the date of loss is the date the debt was due. *Butler Plaza, Inc. v. Allen Trovillion, Inc.*, 389 So. 2d 682, 683 (Fla. 5th DCA 1980) (citation omitted); *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1279 (11th Cir. 2003). Further, it is not necessary for the jury to determine the date on which damages are liquidated as long as it is "clear from the context of the litigation." *RDR Computer Consulting Corp. v. Eurodirect, Inc.*, 884 So. 2d 1053, 1055 (Fla. 2d DCA 2004).

According to Nestlé, Florida requires a demand for payment before a court

can award prejudgment interest. However, the cases Nestlé cites do not stand for the proposition that Florida law requires a demand for payment.[3] In each case, the date of loss could not be determined accurately, and there was no pre-suit demand for payment; therefore, prejudgment interest was calculated from the date the complaint was filed. *See Berloni S.P.A. v. Della Casa, LLC*, 972 So. 2d 1007, 1012 (Fla. 4th DCA 2008) (awarding prejudgment interest from the date of filing the lawsuit because date of loss could not be determined); *Padot*, 677 So. 2d at 1380 (finding that, in a tort case, the date of loss was when the value of damages was ascertainable); *Caribank v. Frankel*, 525 So. 2d 942, 945 (Fla. 4th DCA 1988) (per curiam) (holding that prejudgment interest was to be calculated from the date of filing the complaint because there was no evidence of the date of loss nor was there any demand for payment); *Minton v. Spivey*, 505 So. 2d 476, 478 (Fla. 2d DCA 1987) (same); *Butler*, 389 So. 2d at 683 (finding that because the amount of damages was unknown to the defendant until demand was made, the date of loss was the date of demand for payment). Nestlé concedes that Florida applies the

---

[3] Nestlé primarily relies on *Manning v. Clark*, 89 So. 2d 339 (Fla. 1956), for the proposition that a demand is required for an award of prejudgment interest. *Manning* states that interest is to be calculated "on such balance from the time plaintiff's claim became due and was demanded, or suit commenced therefor." *Manning*, 89 So. 2d at 341. However, the court in *Manning* was primarily concerned with whether a debt could be liquidated if an unliquidated counterclaim was still being adjudicated. It makes no mention of whether a demand is required if there is a fixed date of loss. Further, the court went on to state that the rule is that a party is entitled to prejudgment interest from the "due date" of the debt. *Id.* at 341.

20

demand requirement to determine the date of loss where no fixed sum was due and no fixed due date was set.

The district court did not abuse its discretion in awarding interest from May 1, 2003, finding that the latest possible date of loss occurred after the doubles program was terminated in April 2003. *See, e.g.*, *Glover Distrib. Co., Inc. v. F.T.D.K., Inc.*, 816 So. 2d 1207, 1213 (Fla. 5th DCA 2002) (awarding prejudgment interest from the latest possible date on which damages could have been suffered); *Pine Ridge at Haverhill Condo. Assoc., Inc. v. Hovnanian of Palm Beach II, Inc.*, 629 So. 2d 151, 151 (Fla. 4th DCA 1993) (per curiam).

## IV. CONCLUSION

The district court correctly denied Nestlé's motions for judgment as a matter of law and a new trial. Furthermore, the district court did not abuse its discretion in awarding Specialized prejudgment interest in the amount of $239,341.99.

**AFFIRMED**